**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**FILE NO.: 1:26-cv-1207**

| | | |
|---|---|---|
| DON T. SEARS,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, and COLUMBIA DEBT RECOVERY, LLC dba GENESIS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Don T. Sears ("Plaintiff") brings this Complaint against Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union") (collectively, "Credit Bureau Defendants"), and Columbia Debt Recovery, LLC dba Genesis ("Genesis"), (all collectively, "Defendants"), for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*., arising out of the Credit Bureau Defendants' inaccurate reporting of an alleged unpaid account on Plaintiff's credit files and reports, their subsequent failure to reasonably reinvestigate Plaintiff's dispute of the same, and Genesis's failure to investigate Plaintiff's credit disputes and accurately instruct the Credit Bureau Defendants to modify, delete, or permanently block credit account information on Plaintiff's credit report that was inaccurate and misleading.

## PRELIMINARY STATEMENT

1. Plaintiff's claims arise of the Credit Bureau Defendants' blatantly inaccurate credit reporting, wherein they reported and failed to investigate an alleged debt with Genesis that he did not incur. Plaintiff disputed to the Credit Bureau Defendants with detailed explanation of why the

reporting was inaccurate. However, the Credit Bureau Defendants failed in their duties to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and failed to conduct reasonable investigations for each submitted dispute.

2. Accordingly, Plaintiff brings claims against the Credit Bureau Defendants for failing to follow reasonable procedures to assure the maximum possible accuracy of the contents of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. § 1681e(b), and for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file and report(s), in violation of the FCRA, 15 U.S.C. § 1681i.

3. Plaintiff also brings claims against Defendant Genesis for failing to reasonably investigate Plaintiff's disputes and review all relevant information provided by the Credit Bureau Defendants, in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1). Plaintiff submitted detailed disputes with supporting documentation to each Credit Bureau Defendant that were relayed to Genesis. Genesis failed to reasonably review Plaintiff's disputes, failed to conduct a lawful reinvestigation, and continued to furnish false information to the Credit Bureau Defendants long after it knew, or should have known, the account was inaccurate.

4. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, and costs and attorneys' fees from the Defendants for their willful and/or negligent violations of the FCRA, 15 U.S.C. §§ 1681, *et seq*.

## THE PARTIES

5. Plaintiff Don T. Sears ("Plaintiff") is a natural person who resides in Durham, North Carolina, Durham County, and is a "consumer" as that term is defined in 15 U.S.C. 1681a(c).

6. Defendant Equifax Information Services, LLC ("Equifax") is a foreign limited liability company authorized to do business in the State of North Carolina, including in this district.

7. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

8. Defendant Experian Information Solutions, Inc. ("Experian") is a foreign corporation authorized to do business in the State of North Carolina, including in this District.

9. Experian is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Experian is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumers reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

10. Defendant Trans Union, LLC ("Trans Union") is a foreign limited liability company authorized to do business in the State of North Carolina, including in this District.

11. Trans Union is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

12. Defendant Columbia Debt Recovery, LLC dba Genesis ("Genesis"), is a foreign corporation authorized to do business in the State of North Carolina, including this District.

13. Genesis is a debt collection agency and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

14. This Court has federal question jurisdiction conferred by 28 U.S.C. 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) since a material portion of the events or omissions giving rise to the claim occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

16. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

17. The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…" 15 U.S.C. § 1681(b).

18. The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

### The Credit Bureau Defendants' Processing of Credit Information

19. The major credit bureaus, Equifax, Experian, and Trans Union, regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

20. These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

21. Equifax, Experian, and Trans Union collect information from thousands of furnishers.

22. The process by which Equifax, Experian, and Trans Union receive, sort, and store information is largely electronic.

23. Equifax, Experian, and Trans Union take the credit information reported by furnishers and create consumer credit files.

24. Equifax, Experian, and Trans Union maintain credit files on more than 200 million consumers.

25. Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

**The Credit Bureaus' Method for Considering Consumer Credit Report Disputes**

26. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

27. Consumer reporting agencies Equifax, Experian, and Trans Union have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

28. Furnishers report credit information to Equifax, Experian, and Trans Union through the use of coded tapes that are transmitted to Equifax, Experian, and Trans Union on a monthly basis through software known as Metro 2.

29. Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

30. Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ( ACDV ) electronic form.

31. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

32. These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

33. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

34. The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

35. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging

to the disputing consumer, updating information related to the account, or deleting the account entirely, and returning the ACDV to the respective credit bureau(s) via e-OSCAR.

**Genesis Misattributes a Debt to Plaintiff**

36. Plaintiff discovered on his credit an alleged debt being collected on by Genesis for the original creditor Regent Place.

37. This account was inaccurately reported as a delinquent collection account despite Plaintiff not having an outstanding debt with Regent Place. Plaintiff previously applied to rent from Regent Place and paid a $400 application fee. However, Genesis began reporting a collection account on Plaintiff's credit reports alleging a past due balance of $400 owed.

**Plaintiff Disputes to the Credit Bureau Defendants**

38. On or about November 12, 2025, Plaintiff mailed dispute letters to Equifax, Experian, and Trans Union, disputing the inaccurate Genesis tradeline. Plaintiff enclosed a copy of his bank statements showing proof of payment for the alleged debt.

39. On or about December 10, 2025, Equifax completed its investigation of Plaintiff's dispute and returned the results of the investigation to him. Equifax confirmed the account as "verified" and continued to inaccurately report the tradeline as a collection account.

40. On or about December 11, 2025, Experian completed its investigation of Plaintiff's dispute and returned the results of the investigation to him. Experian confirmed the account as "verified" and continued to inaccurately report the tradeline as a collection account.

41. On or about December 11, 2025, Trans Union completed its investigation of Plaintiff's dispute and returned the results of the investigation to him. Trans Union confirmed the account as "verified" and continued to inaccurately report the tradeline as a collection account.

**Plaintiff Suffered Actual Harm**

42. Equifax, Experian, and Trans Union continued to report the derogatory account on Plaintiff's credit reports, despite being notified that this information was false.

43. Plaintiff attempted to resolve these matters with Defendants and his credit was significantly damaged by Defendants' failure to correct the inaccurate reporting.

44. As a result of the defamatory nature of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

a. Denial of housing applications;

b. Chilled from applying for credit or housing;

c. Out-of-pocket expenses related to communication costs, and certified mail for disputes;

d. Loss of time attempting to cure the error; and,

e. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

**Defendants' Conduct was Willful**

45. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69.

46. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction

right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 151 (4th Cir. 2008).

47. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. The Credit Bureaus' dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

48. Like the Credit Bureaus, Genesis has had actual notice of established law defining its duties under § 1681s-2(b). The leading case in this regard is the Fourth Circuit's decision, *Johnson v. MBNA Am. Bank, NA*. 357 F.3d 426 (4th Cir. 2004). *Johnson* and its progeny long ago established that the § 1681s-2(b)(1)(A) directive to furnishers to "conduct an investigation with respect to the disputed information" required a "reasonable investigation," that is, a "careful" or "searching inquiry," as opposed to a "superficial" one, "to determine whether the disputed information can be verified." *Johnson*, 357 F.3d at 430–31.

49. Defendants' procedures imposed on the Plaintiff and similarly situated consumers are an unjustifiable and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT I:
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim For Relief Against Equifax, Experian, and Trans Union)

50. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-49 as if fully stated herein.

51. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

52. On multiple occasions in 2025, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

53. Despite actual and implied knowledge that the Genesis tradeline was inaccurate, the Credit Bureau Defendants readily sold such false reports to one or more third-parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

54. The Credit Bureau Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

55. As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff has suffered a range of actual damages including, without limitation, denial of housing; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment to his credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin; and the mental and emotional pain, anguish, humiliation, embarrassment of having difficulty in securing housing due to this inaccurate collection account.

56. The Credit Bureau Defendants' conduct, action, and inaction was willful, rendering them each liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

57. Plaintiff is entitled to recover attorney's fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II:**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Equifax, Experian, and Trans Union)**

58. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-57 as if fully stated herein.

59. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposed a 30-day time limitation for the completion of such an investigation. *Id*.

60. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

61. On multiple occasions, Plaintiff initiated disputes with the Credit Bureau Defendants requesting that they correct or delete the inaccurate tradelines, where no balance was owed and where he is not responsible, and provided proof of payment in support.

62. Either the Credit Bureau Defendants conducted *no* reinvestigation of Plaintiff's disputes, or such reinvestigations were so shoddy and unreasonable as to allow patently false and highly damaging information to remain in Plaintiff's credit files and credit reports.

63. The Credit Bureau Defendants violated 15 U.S.C. § 1681i by failing to delete inaccurate information in Plaintiff's credit files after it received multiple notices of such

inaccuracies; by failing to conduct a lawful reinvestigation on numerous occasions of the disputed tradeline; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

64. As a result of the Credit Bureau Defendants' conduct, action, and inaction, Plaintiff has suffered a range of actual damages including, without limitation, denial of housing; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment to his credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin; and the mental and emotional pain, anguish, humiliation, embarrassment of having difficulty in securing housing due to this inaccurate collection account.

65. The Credit Bureau Defendants' conduct, action, and inaction was willful, rendering them each liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

66. Plaintiff is entitled to recover attorney's fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III:**
**15 U.S.C. § 1681s-2(b)(1)(A) and (B)**
**Failure to Conduct a Reasonable Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**
**(First Claim For Relief Against Genesis)**

67. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-66 as if fully stated herein.

68. Genesis published the aforementioned disputed account to the Credit Bureau Defendants, despite the fact that there was no unpaid balance on the account from Plaintiff's previous apartment.

69. On one or more occasions, by example only and without limitation, Genesis violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

70. On one or more occasions, by example only and without limitation, Genesis violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the Credit Bureau Defendants.

71. Based on the manner in which the Credit Bureau Defendants responded to – or did not respond to Plaintiff's disputes, representing that Genesis had "verified" the supposed accuracy of its reporting, Plaintiff alleges the Credit Bureau Defendants did in fact forward the Plaintiff's disputes via an ACDV to Genesis.

72. Genesis understood the nature of Plaintiff's disputes when it received the ACDVs from the Credit Bureau Defendants.

73. Genesis violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of the aforementioned Account; by failing to review all relevant information regarding the same; by failing to accurately respond to the various ACDVs sent to it by the Credit Bureau Defendants; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccuracies of the account to the Credit Bureau Defendants.

74. As a result of Genesis's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff has suffered a range of actual damages including, without limitation, denial of housing; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss;

detriment to his credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; fear of financial ruin; and the mental and emotional pain, anguish, humiliation, embarrassment of having difficulty in securing housing due to this inaccurate collection account.

75. Genesis's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

76. Plaintiff is entitled to recover attorney's fees and costs from Genesis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT IV:**
**15 .S.C. § 1681s-2(b)(1)(E)**
**Failure to Accurately Correct and Update or Delete Plaintiff's Information After Receiving Plaintiff's Disputes from Credit Bureau Defendants**
**(Second Claim For Relief Against Genesis)**

77. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-76 as if fully stated herein.

78. Genesis violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's dispute from the Credit Bureau Defendants. This failure to correct Plaintiff's information resulted from Genesis's failure to investigate as articulated herein, and after Genesis received notice of Plaintiff's disputes from the Credit Bureau Defendants.

79. As a result of Genesis's violations of 15 U.S.C. § 1681s-2(b)(1)(E), Plaintiff has suffered a range of actual damages including, without limitation, denial of housing; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment to his credit rating; and emotional distress, including, but not limited to, stress; anxiety;

loss of sleep; fear of financial ruin; and the mental and emotional pain, anguish, humiliation, embarrassment of having difficulty in securing housing due to this inaccurate collection account.

80. Genesis's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

81. Plaintiff is entitled to recover attorney's fees and costs from Genesis in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff demands judgment and actual, statutory, and punitive damages against Defendants, jointly and severally; for his attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just and proper.

Dated: October 14, 2026.

Respectfully submitted,

*/s/ Ian E. Vance*

Ian E. Vance
N.C. State Bar No. 60056
MAGINNIS HOWARD
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel: 919-526-0450

Fax: 919-882-8763
ivance@carolinalaw.com

*ATTORNEY FOR PLAINTIFF*